Welcome, everybody, to the fourth and final day of this sitting here in Atlanta. Thank you for accommodating the late start. We've got three cases this morning, and before we get going, just a few preliminaries. Number one, please know that we've read your stuff, the briefs, the underlying cases, statutes, record material, so don't waste your own time with a bunch of factual and procedural ramp-up. There's no time for it. You don't need to do it. Just get straight to the core of the issue. Number two, traffic lighting system, green, go, yellow, slow, red, please stop. I have not been a very good or robust timekeeper this week. I'm going to endeavor to be better today. So really do, when the red light goes off, please respect the court's time and wind up. If we've asked you questions, you may of course finish the answer to your question, but just keep in mind that's not the opportunity to begin a new line of argument. All right, very well, let's start with case number one, which is Smith v. Odom, 23-13670. Ms. Billheimer, for the appellant. Mr. Richard, for the appellee. Ms. Billheimer, whenever you're ready. Thank you, and may it please the Court. This case centers on violations of grant assurances, and in particular the violation of grant assurances with respect to publicly funded airports and the exclusive rights prohibition that's set out in two different statutes. Grant Assurance Number 23 is supported by 49 U.S.C. 40103E as well as 49 U.S.C. 47107A4. I have, I'll have to confess, I have some, not some, lots of confusion about how those two statutes interact. They seem to be largely materially similar. So one applies to grants only and one is sort of more generic, is that how it goes? That's correct, Your Honor, but with respect to the 40103, it's still applicable and it does prohibit exclusive rights that are created after the statute, any leases that were in existence before 1982. You have to meet both prongs of that statute in order to allow an exclusive right to continue. It's fundamental, Your Honor, with respect to taxpayer use of funds at public airports that there be robust competition, and Grant Assurance 23 and these two particular statutes are designed to ensure that there is competition where federal funds are used. Turning to the public disclosure bar, Your Honor, we contend that public disclosure does not bar relator's complaint. Here there were two articles that the district court relied on. Those articles were from 2014 and they only address conduct that occurred in late 2013 and in early 2014. Mr. Smith as the relator has brought forth in his complaint allegations of wrongdoing on behalf of Mr. Odom and the county that predate and are not contained in those articles and also conduct by the county that occurred after the articles. But how different would you say the conduct is? Because for public disclosure, substantially the same means significant overlap, not identical. So what's different here? So the gravamen of the news articles is that Mr. Odom may have caused the county to make false claims. So it's that proximate causation, not that the county engaged in any wrongdoing. The county was, and the articles make this contention, the county was basically not aware at the time, and it would have been Mr. Odom's conduct that caused the false claims. Mr. Smith as relator has brought forth allegations of conduct by the county that caused false its own false claims to the government. Those occurred after the news articles. But as a result of the same general scheme that was described in the articles, right? Well, so the scheme in the articles is that Mr. Odom had obtained use, had obtained control of both of the FBOs at the airport. And that's really important because the history of this to build a second FBO, and he was permitted to do that. And then there were two operating FBOs. And then Mr. Odom, as the relator has alleged, engaged in conduct to covertly obtain control of both of them. Now, that happened in 2012. That was never disclosed in the news articles that came out later. Is it just the covertness that wasn't disclosed or something else? It was both, Your Honor. It was the fact that Odom had obtained control of MiracleStrip Aviation using two different people than the ones that were set out in the article. It's the covertness and a different instrumentality to get there. None of that, the different people he used to obtain control of it. Isn't that just evidence? I mean, so first, I think the other side, pages 11 through about 13, they detail and compare what appears in the article as compared to specific allegations in the complaint. And the way that I'm seeing it right now is that the article provides a general narrative of what happened. And perhaps Mr. Smith is providing the evidence to support that narrative. Is that not a duplication? So Your Honor, it's actually Mr. Smith brought forth two different schemes that predate the article. One was discussed in the article. But the second one was not. The earlier covert takeover of MiracleStrip Aviation using Mr. Simmons and Mr. Ward, who turns out to be In paragraph 130 of the amended complaint, we detail out all of the false claims that fall in the different date buckets. There was only a limited amount that was discussed in the news articles. For instance, the news article said Mr. Odom's conduct may have resulted in the county being exposed to $2 million in grant assurance issues. Here, we've alleged more than $30 million worth of grant assurance issues. And some of it, I think what's important with respect to the news article is that the county specifically says in the article, we're going to send this to the FAA. And the facts are, and as Mr. Smith has alleged, it was never taken to the FAA. The FAA, they had some general correspondence by email, which I believe this court has said, you know, a formal determination isn't made by some, you know, a few communications. The county never asked for a formal determination. They never, the FAA said, if you need a legal opinion, please reach out to our, the FAA Office of General Counsel. Mr. Smith has alleged that never happened. Let's say that there's a news article about Hospital A in a hospital chain giving false claims for a particular type of medical procedure. Do you think that two years later, someone else could come with allegations about Hospital B and B and not have that fall under original public disclosure? If it's a different hospital, yes. But it's in the same hospital chain, right? So that may be more problematic, but I don't think if it wasn't disclosed and there wasn't a flow up into, I guess it would depend on the corporate structure and how much they have to report up into the chain to their parent company. If it was the sub that had issues and not the parent, and I think it would depend there. Because I guess what I'm seeing, what I'm not seeing in your argument, is any room for discovery and any room for, once a scheme is uncovered, for the parties to engage in discovery and figure out the extent and details of the scheme. It seems like you were saying, if I say, if my client reveals one false claim that wasn't already revealed, then that's enough. And I'm not sure, at least speaking for myself, that that is consistent with the statute's  So I think, Your Honor, I think the material distinction in this particular case is the fact that what was disclosed is conduct by Mr. Odom that may have made the county commit false claims and false grant assurances. But what is important and what Mr. Smith has brought is that the county engaged in conduct after the news articles that created separate and distinct violations of those grant assurances. It's all conduct. Let's say one scheme, a scheme by the hospital is revealed, and for whatever reason the people think they can still get away with it, so they keep doing it. Does someone who reports that they're still doing the scheme that was already revealed, would that qualify? I think that would be a different scenario than what we're dealing with here because Right, but would it qualify? I think it would depend. If it's the exact same scheme, I think there would be an issue. I think I would agree in that. But here, it's a materially different scheme. At the time, the county is saying, we're going to go get FAA approval for this merger. They allowed all this conduct to happen in 2015, 16, 17, 18. We've alleged false claims in that entire period. But it's all related to Odom's behavior and this idea of eliminating competition. So how is that so separate and distinct? You can build on top of the foundational violation, but how is the building on top of creating a separate, materially distinct claim that gets your client out of this prohibition? So I think, Your Honor, if you were looking at the news articles, it's the false claims that may have occurred before those news articles. The news article could not disclose conduct that happened in the future. And it's not the same conduct that was disclosed in the news article. It's conduct by the county not dismantling the violation. The conduct had an obligation as an airport sponsor to ensure that it dismantled any, the FAA says, it doesn't matter how it was created or when it was created, if there's an exclusive right, the county has an obligation as airport sponsor to dismantle it. And they did not do that. And they took fundamental actions after the news articles that resulted in continued false claims, continued, you know, false grant assurances that there was competition at the airport. That is separate and distinct from what was set out in the news articles.  Very well. Thank you so much. You've got your rebuttal time remaining. Mr. Richard, let's hear from you. Thank you, Your Honor. I use the English pronunciation as opposed to the French pronunciation of Richard. With the Court's permission, I'll be presenting oral argument on behalf of both the issue that the Court appears to be particularly interested in, which is the prior disclosure of the facts in the article. What the article said was that Mr. Odom had obtained an interest in the existing provider and the manager of the airport alleged collusion. If you parse the allegations of the amended complaint, Mr. Smith only adds one thing to that. What he adds is that Mr. Odom used two straw men for the purpose of hiding his interest. And incidentally, the article said that he had an interest. That was the whole point of the article. So the only thing that Mr. Smith adds is that he used two straw men for the purpose of hiding that interest. Adding that single fact is an incidental issue. It's just an addition of an incidental basis for the so-called collusion. So the United States Supreme Court has told us that there are two purposes in the FCA. One of them is to encourage whistleblowers, people bringing forth information not otherwise known to the government or to the public, but at the same time to avoid what the court referred to as parasitic lawsuits. If we're going to say that the only thing that a person has to do to have a legitimate lawsuit or a legitimate claim is to add some incidental fact to what already is publicly known, then we're going to be encouraging parasitic lawsuits. And that's what we're dealing with here. There's no allegation, by the way, that Mr. Smith added anything else that went to the essence of the story that was in the newspaper. So let me ask, please go ahead. Well, I just want to clarify, my understanding from Mr. Smith is that, okay, maybe you win with respect to any allegations related to Odom, but their focus is on what was reported after the news articles and the county's behavior. And there is an argument that you could say maybe you don't have a claim against Odom, but the county, now how they behave afterwards, is subject to this lawsuit. But what they're saying is, what counsel says, the county didn't do anything wrong because the county didn't know about Odom's involvement at the time that they made the certifications. And there's no allegation in the amended complaint that the county, with knowledge of the certifications, with knowledge of the information made the certifications, in addition, by the way, of the state and the government, continued to make grants after it's undisputed that they were aware of Mr. Odom's involvement. That's the next issue I want to talk about, which is the issue of materiality. The United States Supreme Court said in Universal Health in 2016 that the requirement for materiality is a demanding requirement. It's not sufficient for the complaint to say that the information that was not disclosed was a condition of payment. It's not conditioned to say that the government had the option to deny payment if it knew about the nondisclosed information. And the court went on to say that if the government continues to grant money after it becomes aware of it, that is, in the words of the Supreme Court, strong evidence of the fact that it wasn't material. Materiality is an essential element of an FCA claim. And here, you have no materiality. Here are some of the reasons. The amended complaint doesn't say that any of this money was misused. This grant money was given to the airport for years, including decades, in which there was only one provider. There is nothing in the amended complaint to suggest what Mr. Odom's percentage was. There's nothing to suggest he had a controlling interest. All it says is that the two strongmen were influenced by him. And Mrs. Smith only knows that because of rumors, as the lower court said. There's no allegation in the complaint that there was another qualified provider. Again, for decades, there was no other person that was interested in being in that before Mr. Odom's company, in which he had some interest, came about. And finally, the government, both state and federal, has, as alleged in the amended complaint, continued to make these grants after there's no question that they were aware of this issue. So there is no materiality here. There's every reason to believe that this information was not material. That being the case, there's no basis for a claim, and that's one of the reasons that the lower court dismissed the complaint. She said there's nothing material and it can't be fixed. That's why she did it with prejudice. The last thing I wanted to comment, of course subject to the Court's questions, is another reason that it's not material, which is the fact that federal law requires a grant of exclusive right. And the question is, what do they mean by a grant of exclusive right? The amended complaint says that Congress didn't say that there must be competition. Council said that the concern was competition, but it doesn't say they could have said there must be competition, there must be more than one. Of course they didn't say that. There only was one for decades, and no law requires that there may be more than one provider. It didn't say that there could be no single provider. It didn't say, Congress didn't say, and the FCA doesn't say, that there cannot be common ownership in more than one provider in an airport. And the law does not say, and the FAA has never said, that a sponsor cannot approve a merger of more than one. What they said was, there cannot be a grant of an exclusive right. Nothing in the amended complaint alleges any facts to indicate that the county granted an exclusive right to anybody. As a matter of fact, if you look at paragraph 55 of the amended complaint, what it says was that Mr. Odom created an exclusive right. That's the whole gravamen of the amended complaint. Is that Mr. Odom did engage in acts which resulted in what they say was an exclusive right. Even that's not an exclusive right. The only thing that it resulted in was the same thing that had been there for decades, which was a single provider, which is not against the law. If the Court has no additional questions, Your Honor, I have nothing further. Thank you. Very well. Thank you very much. Ms. Bilheimer, you've got five minutes remaining.  Your Honors, with respect to the issue of materiality, the district court originally did reference materiality in its original order dismissing the complaint. On a motion to amend the judgment, the court's order, the district court's order specifically said that materiality was not a basis of dismissal for relator's complaint. I would note also that in the motions to dismiss, both Mr. Odom and the county did not address the Escobar factors with respect to materiality, and those are detailed in our opposition to the motion to dismiss. But the district court did affirmatively say it was not basing dismissal on materiality. With respect to the argument by counsel, with respect to an exclusive right, there is an allegation in the complaint that a provider came forward seeking use of one of the two FBOs that exist at the airport, and the county turned them away based on lease agreements, and lease agreements that are controlled by one entity. And that's what's important here, Your Honor. This isn't an airport where there was just one FBO and somebody comes along and wants to take, wants to take that FBO over. The airport's obligations, if there is only one, if there's land available, the sponsor, because taxpayer funds are used, the sponsor must make land available for a second FBO. That happened here. There was one, and then they added two. But then, interestingly enough, they went back to one entity controlling both FBOs, and that is an issue. There is a case pending before the FAA, a Part 16, with respect to grant assurance violations at this airport that Mr. Smith has filed. That's still pending outcome. I would note, with respect to the materiality issue, there was a recent case, Timberview Helicopters versus Okaloosa County, which also involved the same airport and alleged grant assurance violations. The FAA found in favor of Timberview Helicopters finding that the grant assurance violations, there was grant assurance violations, and gave them 30 days to fix the issue. And after that, they would suspend money. That is important, because it is a basis or the core of, if there is a grant assurance violation, then it is a payment, it's an issue of payment approval, right? They're going to stop all payments if you don't fix the grant assurance violation. And that goes to whether or not a violation occurred, or whether or not your client just brought a duplicative case. So here we contend that it's not duplicative, because there is a lot of conduct that's in the complaint and false claim allegations that occurred in the years after 2014. They involve actions by the county, specifically approving a merger that would allow one provider, one entity, to control two FBOs at a taxpayer-funded airport. And then after that, allowing that to be sold to another third party. So it's a continuation of their conduct. Now, I will say that with respect to, I think there was some allegation that Mr. Odom, you know, that he didn't own 100 percent. We actually do make that allegation in the complaint. But this is kind of, there are different schemes at issue in this case, schemes that were not subject to public disclosure, and that should be, we should be allowed to proceed to the discovery phase with respect to those. And that has to do with conduct that occurred after the articles. It is not substantially the same that the Okaloosa County did not go to the FAA and ask for approval to let one entity control two FBO locations. The county did not go to the FAA and say, can we turn away another person or entity that comes forward and says, we'd like to operate one of the two FBOs at this airport. Again, the FAA has said that where there is space available, that the airport sponsor must make that available to other entities. You can allow one to use it, but if another one comes along and says, I'd like to operate there, they have an obligation because they are using public funds to make that available. Okay. Very well. Thank you so much for presentations on both sides. That case is submitted. We'll move to case.